## HUMMEL v. EQUITABLE LIFE ASSUR. SOC.

### No. 8671.

Circuit Court of Appeals, Seventh Circuit.

Oct. 24, 1945.

Rehearing Denied Nov. 28, 1945.

Carl Meyer, Frank D. Mayer, and John T. Moore, all of Chicago, Ill. (Mayer, Meyer, Austrian & Platt, of Chicago, Ill., of counsel) for appellant.

Arthur Chittick, of Chicago, Ill., for appellee.

Before EVANS, SPARKS, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

A policy for $20,000, dated July 30, 1927, was issued on the life of Saverio Ariani. It was payable to Minnie Ariani, his wife, upon receipt of proof of death of the insured during the continuance of the policy. The policy contained a provision providing that after three full years' premiums had been paid thereon, upon any subsequent default in the payment of any premium and within three months after such default, "this policy may be surrendered by the Insured * * * who may elect one of the following options: * * * (c) To continue the insurance for its face amount (and any outstanding dividend additions) as paid-up extended term insurance for the period shown in the opposite Table, or for such further period, as the dividend additions (if any) will purchase * * *.

"In the event of default in the payment of any premium * * * after this policy has been in force three full years, if the Insured * * * does not select one of said options within three months of such default, the insurance shall be continued as provided under Option (c)."

All premiums due on the policy were paid to May 9, 1933. No premiums, however, were paid thereafter and as a result the policy was in default for nonpayment of premiums due, but the policy was not surrendered at the time of the default or within three months thereafter, and no request was received by defendant from plaintiff or any other party for paid-up insurance under the terms of the policy. Consequently, defendant, proceeding under Option (c) of the policy, continued the policy as extended term insurance for $20,995. As extended term insurance, the policy lapsed on July 9, 1941.

An involuntary petition in bankruptcy was filed, Saverio Ariani was adjudicated a bankrupt on December 3, 1931, and M. M. Martin was appointed trustee. June 6, 1933, Martin requested defendant to pay to him the cash surrender value of the policy. In the demand he stated, inter alia, that every possible effort had been to communicate with the bankrupt and to inform him that the trustee was demanding the cash surrender value of the policy; that the bankrupt had made no offer to redeem the policy by paying to the trustee the amount of the cash surrender value; that more than thirty days had elapsed since the bankrupt had been notified of his right to redeem the policy; and that the policy is now vested in the trustee, but that he does not have possession nor has he been able to locate the policy. March 4, 1937, Martin filed a complaint in which he sought to recover the cash surrender value of the policy computed as of October 3, 1931. The case was dismissed and upon appeal, affirmed. 104 F.2d 573.

From September 8, 1931 to September 4, 1942, Ariani was a fugitive from justice. Upon his arrest the policy was found in his possession. August 11, 1942, plaintiff, as successor trustee, filed his complaint to recover the alleged cash surrender value of the policy. At the trial, March 8, 1944, the trustee tendered the policy to defendant. The case was tried by the court on a stipulation of facts, upon which the court pronounced its conclusions of law and rendered judgment for plaintiff. To reverse the judgment defendant appeals.

The first question raised by defendant is that the plaintiff's right to recovery is barred by an application of the doctrine of res judicata. It insists that both the trustee in bankruptcy and Equitable were parties to the case of Martin v. Equitable Life

Assur. Soc. of United States, 7 Cir., 104 F.2d 573, 124 A.L.R. 1163; that the material issues raised in that case and the instant complaint are the same; that in the Martin suit the court adjudicated that Martin had not complied with the condition precedent in the policy requiring that the policy be surrendered before the cash surrender value would become payable; and that the policy was properly continued from May 9, 1933, as extended term insurance with an obligation on defendant's part to continue the policy in force in accordance with its terms.

The doctrine of res judicata is that a cause of action finally determined between the parties on the merits by a court of competent jurisdiction cannot again be litigated by new proceedings before the same or any other tribunal. A judgment or decree so rendered is a complete bar to any subsequent action on the same claim or cause of action between the same parties or those in privity with them, and extends not only to the questions actually decided but to all grounds of recovery or defense which might have been presented. Harding Co. v. Harding, 352 Ill. 417, 186 N.E. 152, 88 A.L.R. 563. In other words, a matter which has been adjudicated by a court of competent jurisdiction is deemed to be finally and conclusively settled in any subsequent litigation between the same parties where the same question arises, and where some specific, material fact has been adjudicated and determined in a former suit and the same fact is again put in issue in a subsequent suit between the parties, the determination of such fact in the former suit, if properly presented and relied upon, is conclusive upon the parties in the later suit without regard to whether the cause of action is the same in both suits. Neill v. Chavers, 348 Ill. 326-330, 180 N.E. 825; Reilley v. Agricultural Ins. Co., 311 Ill.App. 562, 37 N.E.2d 352.

In an endeavor to escape the application of the doctrine, plaintiff makes the point that neither the parties, the facts, nor the issues of the two suits are identical. He argues that by first joining and later dismissing the Arianis as party defendants, and by surrendering the policy in open court on March 8, 1944, he is entitled to recover the cash surrender value of the policy computed as of October, 3, 1931, the date of the filing of the petition in bankruptcy. With this contention we cannot agree.

The question is not whether any new issue has been raised, but what issues in this case have previously been adjudicated between the parties. There is no question but that the cause of action in the two suits is the same and that the parties to the former suit are identical with those in the present action with the exception of the substitution of Hummel as successor trustee for Martin. Under such circumstances, we think the law is well settled that to make a former adjudication as to any material fact determines an estoppel, it is sufficient that the parties be substantially the same. The fact that in the second suit one is made a party who was not a party in the first action will not defeat the application of the rule of estoppel when such person is a mere formal party, having no interests that can be affected, Hanna v. Read, 102 Ill. 596, 40 Am.Rep. 608, and it is no objection to the operation of the rule that the former action included some parties who are not joined in the present suit or vice versa, provided the judgment was rendered on the merits and provided the cause of action in the two suits is the same, and the party against whom the estoppel is set up was actually a party to the former litigation. Gounaris v. Pavlakos, 202 Ill.App. 268; National Circle, Daughters of Isabella v. National Order of Daughters of Isabella, 270 F. 723, 728; Green v. Bogue, 158 U.S. 478, 503, 15 S.Ct. 975, 39 L.Ed. 1061, and 34 C.J., § 1415, p. 996.

The office of trustee is created by the Bankruptcy Act, and his powers and the remedies he is authorized to pursue in a plenary suit are defined in the Act. See § 70, sub. a(5) of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. a(5). By this section, the trustee is vested by operation of law with title to all property of the bankrupt which is not exempt, all powers which he might have exercised for his own benefit, and all property which, before the filing of the petition in bankruptcy, he could, by any means, have transferred, or which might have been levied upon and sold under judicial process against him, provided that when any bankrupt shall have any insurance policy which has a cash surrender value payable to himself, his estate or personal representatives, he may pay or secure the cash surrender value to the trustee and continue to hold and own the policy free from claims of creditors, Frederick v. Fidelity Mutual Life Ins. Co., 256 U.S. 395, 41 S.Ct.

503, 65 L.Ed. 1009, and the applicable rule is that the trustee takes the bankrupt's property as the bankrupt had it at the time of the petition, subject to all valid claims and equities, Zartman v. First Nat. Bank, 216 U.S. 134, 138, 30 S.Ct. 368, 54 L.Ed. 418. Equitable had rights which had to be considered under its contract, and was under no obligation to carry the policy except in accordance with its terms: that is, to pay over the surrender value upon notice as of the time when demand was made and the policy tendered for surrender, In re Chandler, D. C., 290 F. 988, 990, and Frederick v. Fidelity & Insurance Co., supra; consequently plaintiff, as trustee, acquired no great rights under the policy than the insured and is in no better position to sue upon the policy than Ariani, and since the findings of the court in the Martin case, supra, that the policy was not surrendered at the time of default or within three months thereafter for cash or for paid-up insurance and that the policy under its terms was continued from the date of default as extended term insurance, are conclusive upon the parties to that litigation, and since the policy was continued as extended term insurance, expiring July 9, 1941, the court erred in rendering judgment for plaintiff.

We might well conclude our opinion with what we have already said. However, we choose to add an additional reason for our conclusion.

■ We have already observed that Ariani was adjudicated bankrupt on December 3, 1931; that plaintiff's action was commenced August 11, 1942; and that the policy by its terms expired July 9, 1941. It is not clear whether plaintiff predicates his action solely on the remedy authorized under § 70, sub. a(5) of the Bankruptcy Act or whether he is suing upon the policy. Be that as it may, it is certain that under 11 U.S.C.A. § 29, sub. e of the Bankruptcy Act the trustee must bring suit within such period of time as is permitted by Illinois law, which provides that "Actions on unwritten contracts, expressed or implied, * * * and all civil actions not otherwise provided for, shall be commenced within five years next after the cause of action accrued." Ch. 83, § 16, Ill. Rev.St.1945. Hence, if plaintiff has proceeded upon the remedy created under the provisions of the Bankruptcy Act, he should have brought his suit within five years of the date when his cause of action arose. Garvy v. Wilder, 7 Cir., 121 F.2d 714, and Jackson v. Anderson, 355 Ill. 550, 189 N.E. 924.

If we assume that plaintiff is suing upon the policy, an action thereon must be brought within ten years after the cause of action accrued. Ch. 83, § 17, Ill.Rev.St. 1945. Ariani was adjudicated bankrupt December 3, 1931. Trustee was appointed January 4, 1932 and the complaint was filed August 11, 1942. Thus it appears that the suit was not commenced within ten years next after the cause of action accrued.

The judgment of the District Court will be reversed and the case remanded with directions to dismiss the complaint. It is so ordered.